

# NUMBER 13-17-00339-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**AARON BROWN,**                                                                     **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                               **Appellee.**

---

### On appeal from the 24th District Court
### of De Witt County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Contreras and Benavides
Memorandum Opinion by Chief Justice Valdez**

Appellant Aaron Brown appeals from his conviction of one count of robbery, a first-degree felony enhanced under the habitual felon statute. *See* TEX. PENAL CODE ANN. §§ 12.42(b), 29.02 (West, Westlaw through 2017 1st C.S.). Appellant was sentenced to thirty-seven years' incarceration. By two issues, appellant contends that the evidence is insufficient and that there is jury charge error. We affirm.

## I.     PERTINENT FACTS

Steven Tyler testified that on August 10, 2016, while he was at a bar having a drink, appellant approached him, and they started talking.  Both men were drinking beer.  Tyler stated that he agreed to give appellant a ride home in his wife's vehicle.

Tyler said that he drove for a long while into the country and that he had not expected to drive so far.  According to Tyler, when they reached "civilization," he decided to stop his vehicle at a convenience store because he saw a police officer parked there and thought it was a safe place to stop.[1]

Tyler explained that when he stopped the vehicle, he asked appellant to exit the vehicle, but appellant did not want to get out; therefore, Tyler exited the vehicle, went to the passenger side, opened the door, again asked appellant to get out, and appellant eventually exited the vehicle.  Tyler testified that he then turned around and began walking, and he felt appellant hit him on the back, right side of his head, around the ear area.  Tyler lost consciousness.  Tyler stated that when the emergency workers arrived he was disoriented.  Tyler suffered a concussion, loss of memory, pain in the neck, and his clavicle was broken.  Tyler stated that after appellant hit him, appellant took his wife's vehicle without Tyler's permission.  Tyler explained that the vehicle was later found "not too far away" from the convenience store without any gas.  Tyler recovered the vehicle "[d]ays later" from the Victoria Police Department.[2]

---

[1] Once Tyler parked, the police officer left the convenience store.

[2] During Tyler's testimony, the trial court admitted State's exhibit number 1, which is a video of the incident taken by a camera at the convenience store.  Tyler described the incident depicted in the video as it was played for the jury.  Tyler's description of the incident was consistent with his prior testimony.

Augustin Pineda testified that he witnessed the incident that occurred at the convenience store on August 10, 2016. Pineda stated that he saw Tyler's vehicle arrive at the convenience store and that there were two men inside the vehicle arguing. According to Pineda, he heard Tyler tell appellant that he had already brought appellant "all the way to Yoakum" and "I want you to get out of my car." Pineda testified that Tyler said, "[T]hat's enough, I done did enough [sic] for you, get out," and "[N]o. I'm not taking you to buy any drugs, I ain't taking you anywhere else, get out of my car now." According to Pineda, appellant refused to get out of Tyler's vehicle, and the men kept arguing. Pineda stated that Tyler exited his vehicle, went to the passenger side, opened the door, and told appellant "please get the hell out of my car or I'm going to call the cops, I am not taking you anywhere else, this is the end right here, this is it, get out." Pineda observed that appellant "act[ed] like [he was] going to grab his things out of the car[,]" but instead, he stepped out of the vehicle, "whack[ed]" Tyler "across the head[,]" and knocked Tyler out.

Pineda stated he dropped his merchandise, ran to Tyler's vehicle, and pushed appellant away from Tyler. Pineda testified that when appellant pushed back, Pineda hit appellant and appellant fell next to Tyler. Appellant started pushing Pineda and attempted to jump in the car. Pineda prevented appellant from getting in the car "maybe twice"; however, according to Pineda, appellant eventually got in the vehicle and drove away. Pineda testified that some of the convenience store cashiers were also attempting to stop

3

appellant from leaving and that when appellant drove off, he "almost ran into the store" and the cashiers with the vehicle.[3]

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant contends that there is no evidence that a theft occurred because the State failed to prove that appellant either (1) withheld the property from the owner permanently or for an extended period of time that a major portion of the value or enjoyment of the property was lost to the owner, or (2) disposed of the property in a manner that made its recovery by the owner unlikely. *See id.* § 31.01(2) (West, Westlaw through 2017 1st C.S.).

### A. Standard of Review and Applicable Law

To determine whether the evidence is sufficient, we consider all the evidence in the light most favorable to the verdict and determine whether a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. We resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

In our sufficiency review, "direct evidence of the elements of the offense is not required." *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence, and juries are permitted to make reasonable

---

[3] The State played the video once more for the jury. Pineda described the incident as it occurred in the video. The video was consistent with his testimony.

4

inferences from the evidence presented at trial and in establishing the defendant's guilt. *Id.* "Circumstantial evidence alone can be sufficient to establish guilt." *Id.* "[T]he lack of direct evidence is not dispositive of the issue of a defendant's guilt." *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik*, 953 S.W.2d at 240. A robbery occurs, as charged in this case, when a person in the course of committing theft with the intent to obtain or maintain control of the property either (1) intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 29.02. A person commits theft if that person unlawfully appropriates property with the intent to deprive the owner of that property. *Id.* § 31.03(a) (West, Westlaw through 2017 1st C.S.). Deprive means to (1) "withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner," (2) "restore property only upon payment of reward or other compensation," or

(3) "dispose of property in a manner that makes recovery of the property by the owner unlikely." *Id.* § 31.01(2).

## B. Discussion

As we understand it, appellant argues that the State did not prove that he deprived Tyler of the vehicle. However, for purposes of the offense of theft, "[d]eprivation is not an element of intent to deprive; therefore, the State need not prove actual deprivation . . . to prove intent to deprive." *Rowland v. State*, 744 S.W.2d 610, 612 (Tex. Crim. App. 1988). And, "[w]hile evidence of actual deprivation may be evidence of intent to deprive, other evidence may also indicate whether intent to deprive exists." *Id.*

Viewed in the light most favorable to the prosecution, the evidence showed that appellant struck Tyler on the head and then took the vehicle without permission when Tyler lost consciousness. In addition, after taking the vehicle, appellant did not return it to Tyler, and instead he abandoned it when it ran out of gas. We conclude that from this evidence a rational finder of fact could have reasonably inferred that appellant intended to deprive Tyler of the vehicle. *See Guevara*, 152 S.W.3d at 50 (explaining that intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant); *Villarreal v. State*, 504 S.W.3d 494, 511 (Tex. App.—Corpus Christi 2016, no pet.); *Cooper v. State*, 29 S.W.3d 901, 904 (Tex. App.—Beaumont 2000), *rev'd on other grounds*, 67 S.W.2d 221 (Tex. Crim. App. 2002) (determining that evidence that the appellant took his uncle's vehicle after striking him several times and that the appellant was apprehended because the vehicle broke down sufficiently supported the jury's finding that he had the intent to deprive). Therefore, the evidence is sufficient to support the challenged element. We overrule appellant's first issue.

6

## III.     CHARGE ERROR

By his second issue, appellant contends for the first time on appeal that there is error in the jury charge which caused egregious harm. Specifically, appellant argues that error occurred when the trial court failed "to instruct the jury as to which elements of the charged offense each defined mental state applied."

### A.     The Charge

The abstract portion of the charge defined the culpable mental states as follows:

> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances as viewed from the actor's standpoint.

> 'Theft' means the unlawful appropriation of the property of another with intent to deprive the owner of said property.

The application paragraph of the charge states the following:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 10th day of August, A.D. 2016, in DeWitt County, Texas, as alleged in the indictment, the defendant, Aaron Brown, while in the course of committing theft of property and with intent to obtain or maintain control of the property, intentionally or knowingly or recklessly cause[d] bodily injury to Steven Tyler by striking with his hands, then you will find the defendant guilty of robbery as alleged in the indictment.

### B.     Applicable Law and Standard of Review

There are three conduct elements that may apply to the mental states relevant to criminal offenses: (1) nature of the conduct; (2) result of the conduct; and (3) circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03 (West, Westlaw through 2017 1st C.S.); *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). Nature-of-the-conduct offenses criminalize certain acts. *McQueen*, 781 S.W.2d at 603. Result-of-the-conduct offenses criminalize the results of certain acts. *Id.* Circumstances-surrounding-the-conduct offenses criminalize behavior based upon the circumstances in which the act was done. *Id.* "An offense may contain any one or more of these 'conduct elements' which alone or in combination form the overall behavior which the Legislature has intended to criminalize, and it is those essential 'conduct elements' to which a culpable mental state must apply." *Id.*

Robbery contains all three conduct elements. *Ash v. State*, 930 S.W.2d 192, 195 (Tex. App.—Dallas 1996, no pet.). First, "the State is required to prove that appellant 'caused bodily injury'; this refers to a result of the conduct." *Id.* Next, "[t]he portion of the charge requiring that the jury find that appellant caused the bodily injury 'in the course of committing theft' refers to the circumstances surrounding the assaultive conduct." *Id.* Finally, "reference to 'unlawful appropriation' refers to the nature of the conduct."[4] *Id.*

In *Patrick v. State*, the jury charge included all three conduct elements in the definitions of intentionally, knowingly, and recklessly. 906 S.W.2d 481, 491 (Tex. Crim. App. 1995) (en banc). The court determined that it was not error for the trial court to include all three conduct elements because the charged offense included all three. *Id.*

---

[4] A person commits theft if that person unlawfully appropriates property with the intent to deprive the owner of that property. TEX. PENAL CODE ANN. § 31.03(a) (West, Westlaw through 2017 1st C.S.).

However, the court held that the trial court erred by "not limiting the additional language concerning the culpable mental state to proving the conduct element of the underlying offense." *Id.* at 492. Thus, when the trial court includes all three conduct elements in the definitions of the mental states, it is error if the trial court fails to limit the conduct elements to the proper culpable mental states of the application portion of the charge. *Id.*

Nonetheless, the *Patrick* court determined that "no harm resulted from the [trial] court's failure to limit the definitions of culpable mental states to proving the conduct element of the underlying offense . . . because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions." *Id.* at 493. The court reasoned that it was apparent "which conduct element applies to which element of the offense" because the application paragraph stated that the appellant "did intentionally cause the death of [the victim]" and "[t]he term intentionally directly modifies the phrase 'cause the death.'" *Id.* The court stated, "Referring back to the definitions of culpable mental states, it is obvious that the 'result of conduct' and cause the result language are the applicable portions of the full code definitions." *Id.*

"For unpreserved charge error to be reversible, the error must have been so harmful that the defendant was denied a fair and impartial trial." *Ash*, 930 S.W.2d at 195 (citing *Patrick*, 906 S.W.2d at 492; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). The appellant must show that he has suffered actual "egregious" harm. *Almanza*, 686 S.W.2d at 171. In determining whether the error was egregious, we must examine the entire jury charge. *See id.* We must consider the following: (1) the charge itself; (2) the state of the evidence including contested issues; (3) argument of counsel; and (4) any other relevant information. *Ash*, 930 S.W.2d at 195 (citing *Hutch v. State*,

922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Bailey v. State*, 867 S.W.2d 42, 43 (Tex. Crim. App. 1993)).

**C.      Discussion**

In this case, the trial court included multiple conduct elements in the abstract portion of the charge.  As robbery includes all three conduct elements, the trial court did not err on that basis.  *See Ash*, 930 S.W.2d at 195; *see also Patrick*, 906 S.W.2d at 491.  However, the trial court in this case did not limit the conduct elements to the proper culpable mental states of the application portion of the charge.  *See Patrick*, 906 S.W.2d at 491; *Ash*, 930 S.W.2d at 195 ("[A] court errs in failing to limit the definitions to the conduct element or elements of the offense to which they apply.").  Thus, we conclude the trial court erred.  *See Patrick*, 906 S.W.2d at 493; *Ash*, 930 S.W.2d at 195; *see also Fields v. State*, 966 S.W.2d 736, 739 (Tex. App.—San Antonio 1998), *rev'd on other grounds*, 1 S.W.3d 687 (Tex. Crim. App. 1999) (en banc) (agreeing with the appellant that a proper jury charge, which includes a crime that includes all three conduct elements, would state:  "'The following definition applies to the mental state in causing or placing another in fear of bodily injury:  A person acts 'intentionally,' or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result,' and so on for each conduct element").

Nonetheless, we conclude that there was no egregious harm because the application paragraph stated that the jury could find appellant guilty only if he intentionally, knowingly, or recklessly *caused* serious bodily injury.  Thus, referring to the definitions of the culpable mental states, it is obvious that the "result of conduct" and "cause the result" language are the applicable portions of the full code definitions.  *See Patrick*, 906 S.W.2d

10

at 493.  Thus, like in *Patrick*, the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions.  *See id.*; *see also Ash*, 930 S.W.2d at 195 (finding no egregious harm in the jury charge that contained a similar application paragraph).[5]  Also, during closing argument, the State clarified that the jury had to determine that appellant acted intentionally, knowingly, or recklessly when he struck Tyler on the back of the head.  And, like in *Ash*, there is nothing in this record showing that the jury was so confused by the complained-of instruction that appellant was

---

[5] Specifically, the application paragraph in *Patrick* stated:

To warrant a conviction of the defendant, [appellant], of capital murder, you must find from the evidence beyond a reasonable doubt not only that on the occasion in question the defendant, [appellant], was engaged in the commission or attempted commission of the felony offense of burglary of a habitation of [the deceased], as defined in the charge, but also that during the commission of the burglary of a habitation or attempted commission thereof, if any, the defendant, [appellant], caused the death of [the deceased], by cutting said [deceased] with a knife, a deadly weapon, or by striking said [deceased] with a blunt object, a deadly weapon, the exact nature and description of which is unknown to the Grand Jurors, with the intention of thereby killing said [deceased]. Unless you find from the evidence beyond a reasonable doubt that the [appellant], on said occasion, specifically intended to kill the said [deceased] when he cut said [deceased] with a knife, a deadly weapon, or when he struck said [deceased] with a blunt object, a deadly weapon, the exact nature and description of which is unknown to the Grand Jurors, if he did cut said [deceased] with a knife, a deadly weapon, or strike [the deceased] with a blunt object, a deadly weapon, the exact nature and description of which is unknown to the Grand Jurors, you cannot convict the [appellant] of the offense of capital murder.

*Patrick v. State*, 906 S.W.2d 481, 492–93 (Tex. Crim. App. 1995).

The application paragraph in Ash stated:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that [the appellant], Edward Steven Ash, either acting alone or with another as a party to the offense as that term is herein defined, on or about the 28th day of June, 1994, in the County of Dallas and State of Texas, did then and there while in the course of committing theft and with intent to obtain or maintain control of the property of Dalhia Jan Richardson, hereinafter called complainant, the said property being a purse or current money of the United States of America, without the effective consent of said complainant and with intent to deprive the said complainant of said property, did then and there knowingly or intentionally cause bodily injury to the said complainant, by striking said complainant's head repeatedly against some pavement, you will find the defendant guilty of the offense of robbery, as included in the indictment, and you will make no finding in your verdict as to punishment.

*Ash v. State*, 930 S.W.2d 192, 194 (Tex. App.—Dallas 1996, no pet.).

11

denied a fair and impartial trial. *See Herrera v. State*, 527 S.W.3d 675, 679 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Ash*, 930 S.W.2d at 195). Moreover, appellant's mental state was not seriously contested at trial.[6] *See id.*; *Ash*, 930 S.W.2d at 195.

For these reasons, we conclude the record does not show that the charge error resulted in harm so egregious that appellant did not have a fair and impartial trial. *See Herrera*, 527 S.W.3d at 679. We overrule appellant's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

<u>**s/ Rogelio Valdez**</u>
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of December, 2018.

---

[6] At trial, appellant did not contest that he took the vehicle without Tyler's permission. Specifically, appellant stated that he abandoned the vehicle because he "realized that taking the property all the way home, it didn't belong to me and just to fear [sic] . . . of getting locked up again."